IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 12, 2014

## STATE OF TENNESSEE v. SKYLAR MATTHEW GANT

**Appeal from the Circuit Court for Bedford County**
**No. 17352, 17574     Forest A. Durard, Jr., Judge**

_____

**No. M2014-00500-CCA-R3-CD - Filed January 13, 2015**

_____

The Defendant-Appellant, Skylar Matthew Gant, entered guilty pleas to two counts of the sale of .5 grams or more of crack cocaine, two counts of the delivery of .5 grams or more of crack cocaine, and one count of failure to appear, with the trial court to determine the length and manner of service of the sentences. Following a sentencing hearing, the trial court merged the alternative counts of the sale and delivery of crack cocaine and imposed two concurrent twelve-year sentences for the drug offenses. For the felony failure to appear, the court imposed a four-year sentence to be served consecutively to the twelve-year sentences, for a total effective sentence of sixteen years in the Tennessee Department of Correction. On appeal, the Defendant argues that the trial court abused its discretion in denying him an alternative sentence. Upon review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT H. MONTGOMERY, JR., JJ., joined.

Donna Orr Hargrove, District Public Defender; Andrew Jackson Dearing, III (on appeal) and Michael J. Collins (at trial), Assistant Public Defenders, Shelbyville, Tennessee, for the Defendant-Appellant, Skylar Matthew Gant.

Robert E. Cooper, Jr., Attorney General and Reporter; Tracy L. Alcock, Assistant Attorney General; Robert Carter, District Attorney General; and Michael Randles and Richard Cawley, Assistant District Attorneys General, for the Appellee, State of Tennessee.

## OPINION

The Defendant-Appellant, Skylar Matthew Gant, was indicted in case number 17352 for two counts of the sale of .5 grams or more of crack cocaine and two counts of the delivery

of .5 grams or more of crack cocaine, Class B felonies.  See T.C.A. § 39-17-417.  He was subsequently indicted in case number 17574 for one count of failure to appear, a Class E felony.  See id. § 39-16-609.  The Defendant entered open guilty pleas to these offenses as charged.

**Plea Submission Hearings.**  At the October 22, 2012 plea submission hearing, the State summarized the facts supporting the guilty pleas to the drug offenses in case number 17352:

> Count 1 and 2 [for the sale and delivery of .5 grams or more of crack cocaine] occurred on April 23rd, 2008.  There was a confidential informant [CI] working under the control and direction of the Drug Task Force, who placed a recorded and monitored telephone call to the defendant about purchasing crack cocaine in the amount of $400.  The defendant agreed to that.
>
> The confidential informant was searched, and that met with negative results, was provided a recorder and the funds with which to make the purchase.  Then went to the defendant's mother's residence here in Bedford County, under the observation of the task force agents.  The defendant was actually observed coming outside of the residence, greeting the confidential informant.  They both then went back inside.  The transaction occurred.  The defendant directed the confidential informant to actually hand the money to a third party black male and the confidential informant did that.  The defendant then handed back the drugs.  The confidential informant then left, met back up with the task force agents, handed the drugs over to the agents.  They were sent to the lab, and it weighed 10.1 grams.
>
> Counts 3 and 4 [for the sale and delivery of .5 grams or more of crack cocaine] occurred on April 29, 2008, and, again, was a controlled buy.  There was a recorded telephone call about discussing the purchase of crack cocaine.  The agreement was made to do that.  The confidential informant was searched, and that met with negative results.
>
> It was supposed to be a $300 buy, so the confidential informant was provided with money and a recording device.  The confidential informant went to the defendant's residence, entered the residence.  This was a hand-to-hand buy.  The confidential informant handed the money to the defendant, and the defendant hand[ed] back the drugs.  However, it wound up being a little bit less than $300.  It was $245.

The CI then left and met back up with task force agents, handed over the drugs which were purchased, and $55, which was not used in the transaction. Was searched again. That met with negative results. The dope was sent to the lab, and it weighed 4.8 grams.

The trial court accepted the Defendant's guilty pleas and set the matter for a sentencing hearing on December 17, 2012. Thereafter, the Defendant failed to appear at the hearing, which resulted in his indictment in case number 17574. He was ultimately apprehended about ten months later, in October 2013. At the December 16, 2013 plea submission hearing, the court accepted the Defendant's guilty plea for felony failure to appear.

**Sentencing Hearing.** At the February 20, 2014 sentencing hearing, the trial court merged the counts of sale and delivery of crack cocaine into two convictions for the separate transactions occurring in April 2008. The Defendant's original and updated presentence reports were admitted into evidence without objection. The reports reflected that the Defendant had a history of juvenile and adult convictions in Bedford County, including a number of probation revocations. The State called one witness, and the Defendant did not present any proof.

Director Timothy Lane of the 17th Judicial District Drug Task Force testified that he had held his current position for approximately nineteen years. He characterized the crack cocaine problem in his particular district as "basically an epidemic" and "one of those drugs that has always been in the top two." According to Director Lane, the "serious problems" and chronic addictions were caused by people who were willing to sell the drug. He opined that these individuals should be held accountable with incarceration or "they are going to go right back out and do it again." In his experience, many dealers were involved in a "revolving cycle" in which they were originally sentenced to incarceration, were released into the community within four or five months after completing boot camp, and then returned to selling crack cocaine. Director Lane stated that "the boot camp program ha[d] a very high recidivism rate."

In reviewing the presentence reports, the trial court noted that the Defendant's prior record began with an assault conviction at age twelve in May 2000 and "just ke[pt] getting worse and worse." The court counted ten separate juvenile offenses and "violations of various types of probation[.]" The court found that the Defendant had been unsuccessful in every type of community release program since he was a juvenile. As an adult, the court noted that the Defendant had multiple drug offenses. Accordingly, the court concluded that the Defendant had, "on each occasion, failed miserably at his attempts to be released in the community."

The trial court found four applicable enhancement factors and no mitigating factors. It applied enhancement factor (1), that the Defendant had a history of criminal convictions or criminal behavior, in addition to that necessary to establish his range; factor (8), that the Defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community; factor (13), that the Defendant committed his drug offenses while released on probation, and he failed to appear while on parole; and factor (16), that the Defendant committed the juvenile offense of theft of property valued at $1,000 or more, which would constitute a felony if committed by an adult. See T.C.A. § 40-35-114(1), (8), (13), (16).

Regarding the Class B felony drug offenses, the trial court sentenced the Defendant as a Range I, standard offender to twelve years' imprisonment for each conviction. For the Class E felony failure to appear, the court sentenced the Defendant as a Range II, multiple offender to four years because he had three prior drug convictions at the time of this offense. Therefore, the Defendant received the maximum sentences in each range. See id. §§ 40-35-105, -106, -112(a)(2), (b)(5).

In determining whether the sentences would be served concurrently or consecutively, the trial court found the Defendant to be "an offender whose criminal activity is extensive." See id. § 40-35-115(b)(2). While noting that the Defendant only had misdemeanors prior to his nine-year sentence for his first drug conviction, the court stated that the Defendant had "graduated from there quite a bit in a short period[.]" The court also found that the Defendant had "sentences that weren't fully served," and "[h]e committed another felony while out on parole or other release program." The court imposed concurrent twelve-year terms for the two drug offenses because it did not "feel quite enough to be on the consecutive path[.]" Regarding the failure to appear, the court noted that "there is no issue . . . as far as whether it's going to be consecutive or concurrent because it will be consecutive." See id. § 39-16-609(f). The sentences in this case were ordered to be served consecutively to the Defendant's prior nine-year sentence in a separate drug case.

## ANALYSIS

On appeal, the Defendant argues that the trial court erred in denying him an alternative sentence. Specifically, he argues that he is entitled to probation because he received twelve-year sentences for his Class B felony convictions, a four-year sentence for his Class E felony conviction, and because he does not fall within the parameters of Tennessee Code Annotated section 40-35-102(5). He further contends that the circumstances of the offenses did not warrant the denial of a sentence of probation and that there was no evidence showing that a sentence of confinement would deter others in the jurisdiction from committing similar criminal acts. Finally, he asserts that probation would be in the best interest of the defendant

and the public because he would be able to work and support himself rather than imposing expenses on the public. The State responds that the court properly exercised its discretion in ordering the Defendant to serve his sentence in confinement. Upon review, we agree with the State.

We begin our analysis by noting that the Defendant was not eligible for probation for his Class B felony convictions because he received twelve-year sentences for those offenses. He was eligible, however, for probation for his Class E felony conviction because the sentence actually imposed was ten years or less. See T.C.A. § 40-35-303(a). Nevertheless, an eligible defendant "is not automatically entitled to probation as a matter of law." Id. § 40-35-303(b), Sentencing Comm'n Cmts. Moreover, the Defendant was not considered a favorable candidate for alternative sentencing in his failure to appear conviction because he was sentenced as a multiple offender. See id. § 40-35-102(6).

Pursuant to the 2005 amendments to the Sentencing Act, a trial court must consider the following when determining a defendant's specific sentence and the appropriate combination of sentencing alternatives:

> (1) The evidence, if any, received at the trial and the sentencing hearing;
> (2) The presentence report;
> (3) The principles of sentencing and arguments as to sentencing alternatives;
> (4) The nature and characteristics of the criminal conduct involved;
> (5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;
> (6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and
> (7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

Id. § 40-35-210(b)(1)-(7). In addition, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed." Id. § 40-35-103(5). A court must impose a sentence "no greater than that deserved for the offense committed" and "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Id. §§ 40-35-103(2), (4).

Because of the broad discretion given to trial courts by the 2005 amendments to the Sentencing Act, "sentences should be upheld so long as the statutory purposes and principles, along with any applicable enhancement and mitigating factors, have been properly addressed." State v. Bise, 380 S.W.3d 682, 706 (Tenn. 2012). Therefore, this court reviews

a trial court's sentencing determinations under "an abuse of discretion standard of review, granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." Id. at 707. In addition, this standard of review applies to a trial court's decision regarding "probation or any other alternative sentence." State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012). A court abuses its discretion only when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." State v. Shuck, 953 S.W.2d 662, 669 (Tenn. 1997); see also State v. Kyto Sihapanya, ___ S.W.3d ___, No. W2012-00716-SC-R11-CD, 2014 WL 2466054, at *2 (Tenn. Apr. 30, 2014). The defendant has the burden of showing the impropriety of the sentence on appeal. T.C.A. § 40-35-401(d), Sentencing Comm'n Cmts.

Any sentence that does not involve complete confinement is an alternative sentence. See generally State v. Fields, 40 S.W.3d 435 (Tenn. 2001). Tennessee Code Annotated section 40-35-102(6)(A) states that a defendant who does not require confinement under subsection (5) and "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary[.]" However, a trial court "shall consider, but is not bound by, the advisory sentencing guideline" in section 40-35-102(6)(A). Id. § 40-35-102(6)(D). In determining whether to deny alternative sentencing and impose a sentence of total confinement, the trial court should consider whether:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Id. § 40-35-103(1)(A)-(C); see State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). Tennessee Code Annotated section 40-35-102(5) gives courts guidance regarding the types of defendants who should be required to serve their sentences in confinement:

In recognition that state prison capacities and the funds to build and maintain them are limited, convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals

-6-

of society and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration[.]

We note that a trial court's determination of whether the defendant is entitled to an alternative sentence and whether the defendant is a suitable candidate for full probation are different inquiries with different burdens of proof. State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). "A defendant's sentence is based on 'the nature of the offense and the totality of the circumstances in which it was committed, including the defendant's background.'" State v. Trotter, 201 S.W.3d 651, 653 (Tenn. 2006) (quoting Ashby, 823 S.W.2d at 168). Following the 2005 amendments to the Sentencing Act, a defendant is no longer entitled to a presumption that he or she is a favorable candidate for alternative sentencing. State v. Carter, 254 S.W.3d 335, 347 (Tenn. 2008).

Although the trial court shall automatically consider probation as a sentencing alternative for eligible defendants, the defendant bears the burden of proving his or her suitability for probation. Id. § 40-35-303(b). The defendant must demonstrate that probation would "subserve the ends of justice and the best interest of both the public and the defendant." Carter, 254 S.W.3d at 347 (citations omitted). When considering probation, a trial court should consider the nature and circumstances of the offense, the defendant's criminal record, the defendant's background and social history, the defendant's present condition, including physical and mental condition, the deterrent effect on the defendant, and the best interests of the defendant and the public. State v. Kendrick, 10 S.W.3d 650, 656 (Tenn. Crim. App. 1999) (citing State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978)). "[A] trial court's decision to grant or deny probation will not be invalidated unless the trial court wholly departed from the relevant statutory considerations in reaching its determination." Sihapanya, 2014 WL 2466054, at *3.

The Defendant also argues that the trial court improperly denied his request for a community corrections sentence. He contends on appeal that he is eligible for community corrections because he meets all the criteria, his offenses were not violent, and he would be better suited for job training and rehabilitation.

The purpose of the Community Corrections Act of 1985 was to "[e]stablish a policy within the state to punish selected, nonviolent felony offenders in front-end community based alternatives to incarceration, thereby reserving secure confinement facilities for violent felony offenders[.]" T.C.A. § 40-36-103(1). Eligible offenders under the Community Corrections Act include:

(A) Persons who, without this option, would be incarcerated in a correctional institution;

(B) Persons who are convicted of property-related, or drug- or alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parts 1-5;
(C) Persons who are convicted of nonviolent felony offenses;
(D) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;
(E) Persons who do not demonstrate a present or past pattern of behavior indicating violence; and
(F) Persons who do not demonstrate a pattern of committing violent offenses.

Id. § 40-36-106(a)(1)(A)-(F). Simply because an offender meets the minimum requirements under the Community Corrections Act "does not mean that he is entitled to be sentenced under the Act as a matter of law or right." State v. Ball, 973 S.W.2d 288, 294 (Tenn. Crim. App. 1998) (citing State v. Taylor, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987)). Instead, the Act's criteria "shall be interpreted as minimum state standards, guiding the determination of eligibility of offenders under this chapter." T.C.A. § 40-36-106(d).

Based on the record, we cannot conclude that the trial court abused its discretion in denying alternative sentencing. As an initial matter, the Defendant is not eligible for community corrections because his probation had been violated at the time of consideration. See id., 40-36-106(a)(2). Additionally, the court imposed a sentence of confinement after determining that the Defendant had a long history of criminal conduct and that measures less restrictive than confinement had frequently or recently been applied unsuccessfully to him. See id. § 40-35-103(1)(A), (C). The presentence reports reflects that, as a juvenile offender, the Defendant violated his probation at least five times. In his first felony drug conviction as an adult, the Defendant was sentenced to nine years in the Department of Correction in June 2007 and then released on probation in December 2007 after completing the boot camp program. The Defendant then committed his second and third felony drug offenses in the instant case in April 2008, and his probation was revoked in May 2008. Specifically, he was convicted for selling 4.8 grams and 10.1 grams of crack cocaine less than five months after his release into the community. Thereafter, the Defendant was released on parole in March 2011 for his first drug conviction, and he failed to appear at his December 17, 2012 sentencing hearing while absconding from parole. He was not apprehended until ten months later in October 2013, after he was incarcerated again and his parole was rescinded. Therefore, the record supports the court's finding that the Defendant had "failed miserably" in every type of community release program since he was a juvenile. The Defendant's prior record and unsuccessful attempts at rehabilitation placed him within the parameters of Tennessee Code Annotated section 40-35-102(5). Moreover, the State presented the testimony of the district drug task force director, which established that crack cocaine use was "basically an epidemic" in Bedford County and that measures other than confinement

did not have a deterrent effect. The Defendant presented no proof at the hearing in support of his suitability for probation.

Because the record shows that the trial court carefully considered the evidence, the enhancement and mitigating factors, and the purposes and principles of sentencing prior to imposing a sentence of confinement, the Defendant has failed "to either establish an abuse of discretion or otherwise overcome the presumption of reasonableness afforded" to the court's sentence in this case. Caudle, 388 S.W.3d at 280. Accordingly, we uphold his effective sixteen-year sentence in the Tennessee Department of Correction.

## **CONCLUSION**

Upon review, we affirm the judgments of the Bedford County Circuit Court.

_____
CAMILLE R. McMULLEN, JUDGE